IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel. SIMONE SPARKS**  vs.  **INTEGRACARE HOME HEALTH SERVICES, INC. and KINDRED HEALTHCARE, INC.** | § § § § § § § § § § § § § § § **CASE NO. 6:14-CV-480-JDK** |

# REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendants' Motion to Dismiss Third Amended Complaint (ECF 93). The case is referred to the undersigned for all pretrial matters in accordance with 28 U.S.C. § 636. Having considered the motion, response and reply, it is recommended that the motion be **GRANTED**.

## BACKGROUND

Relator Simone Sparks brings this action pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), as amended, 31 U.S.C. §§ 3729–3733, and the Federal Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7b. *See* Third Amended Complaint (ECF 91). Specifically, Relator alleges that Defendants engaged in an "overarching scheme to 'grow' Defendants' business by increasing patient enrollments by any means necessary and maximizing revenues through fraudulent billing." *Id*. at ¶ 3. Relator asserts that the practices comprising the scheme include:

1

"offering bribes to illegally obtain patient lists for purposes of enrolling patients on those lists in home healthcare ("HH") services with Defendants to be paid for by Medicare; illegally marketing tactics; false billings; billing for services not authorized by a doctor, not medically necessary, or not supported by medical documentation; and falsification of documentation for billing." *Id*. Relator alleges that Defendants "knowingly enrolled patients who did not qualify for HH under Medicare or did not want HH, and billed Medicare and received payments for such patients." *Id*.

As background, Relator is a Registered Nurse who worked for IntegraCare from March 19, 2012 to July 10, 2013. IntegraCare is a home healthcare provider that maintains 47 offices across Texas and offers nursing, physical therapy, occupational therapy, speech therapy, home health, and medical social work services to its patients. Kindred is a Kentucky-based healthcare services company that acquired IntegraCare in August 2012 and assumed managing IntegraCare's operations upon the acquisition.

During Relator's employment with IntegraCare, she conducted several billing audits for the Tyler, Denton, Palestine, and Mt. Pleasant offices. Relator claims that while completing these audits, she discovered discrepancies in IntegraCare's patient files, indicating that offices had engaged in illegal billing practices. Relator avers that IntegraCare falsified documentation to show that it had satisfied the requirements to receive payment from Medicare for home healthcare services. In other words, Defendants purportedly noted in their main form for payment that they had completed or received the documentation necessary for payment. Review of actual files, however, allegedly revealed that certain conditions and prerequisites had not been completed as indicated in the main form submitted for payment. Relator further alleges that IntegraCare failed to return all payments issued through this improper billing within 60 days after she identified the claims and brought the incomplete files to her direct supervisor's attention.

Moreover, Relator claims that IntegraCare engaged in improper marketing practices. IntegraCare employs marketers who are responsible for soliciting referrals of prospective patients in need of home health services. As an example of these improper marketing practices, Relator alleges that in or around February 2013, Lisa Kilgore, a marketer for the Tyler office, reported 40 referrals after failing to bring in a single referral for the prior six months. Relator explains that Ms. Kilgore obtained these referrals from an adult day care center ("ADC") in Longview, Texas. According to Relator, Ms. Kilgore offered the adult day care center's employees various gifts in exchange for access to the center's patient files. Upon receiving access to these files, Ms. Kilgore allegedly completed referral forms with each potential patient's information and submitted the documentation to IntegraCare's centralized intake office, regardless of whether the potential patient was eligible for or interested in home healthcare services.

Throughout her employment, Relator asserts that she brought these issues to her direct supervisor's attention. Ultimately, IntegraCare terminated Relator's employment on July 10, 2013. Relator states that she was told her termination was due to a failure to manage her staff, but she submits that she was not responsible for the staff she was accused of failing to manage. Instead, Relator believes that her termination was related to her attempts to thwart IntegraCare's fraudulent billing practices.

Following the initiation of this lawsuit, the Government filed a Notice of Election to Decline Intervention pursuant to 31 U.S.C. § 3730(b)(4)(B) (ECF 6). The complaint was unsealed and served on Defendants. Defendants filed a motion to dismiss or, alternatively, motion for more definite statement that became moot when Relator filed her First Amended Complaint. Defendants filed a motion to dismiss the First Amended Complaint, that was denied without prejudice, subject to re-urging after Relator was given another opportunity to amend the pleading to address

identified deficiencies. Relator filed her Second Amended Complaint, differing little substantively from the First Amended Complaint, which was followed by another motion to dismiss from Defendants. The undersigned issued a Report and Recommendation recommending that the motion be granted. Noting that Relator asserted that she obtained new evidence following the issuance of the Report, the Court overruled-in-part and sustained-in-part Relator's objections to the Report and determined that Relator should be given yet another opportunity to amend her pleadings. The Court denied the motion to dismiss with leave for Relator to file an amended complaint.

Now before the Court is Relator's fourth pleading, the Third Amended Complaint (ECF 91). The counts asserted in the Third Amended Complaint are identical to those in the Second Amended Complaint, except for the elimination of Relator's previous conversion claim: (1) "submission of false records or statements" under 31 U.S.C. § 3729(a)(1)(B); (2) "presentation of false claims" under 31 U.S.C. § 3729(a)(1)(A); (3) violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(1) by knowingly and willfully giving employees of an ADC gifts in return for patient referrals; and (4) failing to issue a timely refund to Medicare in violation of the Affordable Care Act's 60-day repayment provision resulting in FCA liability under 42 U.S.C. § 1320-7k(d)(3). Third Amended Complaint, ECF 80, at *60–63.

## LEGAL STANDARD

*Rule 12(b)(6)*

Rule 12 (b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In the Fifth Circuit, "a motion to dismiss under [R]ule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum &*

*Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). When considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010); *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1965 and 1966 n.5 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At this stage of the pleadings the analysis concerns only whether the plaintiff has a stated a claim upon which relief can be granted and not the ultimate likelihood of success. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

*Rule 9(b) and FCA Actions*

Claims brought under the FCA are fraud claims that must comply with Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017) (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Rule 9(b) imposes a "heightened pleading standard" and provides that when alleging fraud "a party must state with particularity the circumstances constituting fraud or mistake . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The Fifth Circuit has explained that this heightened pleading standard, at a minimum, "requires the who, what, when, where, and how to be laid out with respect to a fraud claim." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotation marks and citations omitted). Stated simply, Rule 9(b) requires the "who, what, when, where and how" of the alleged fraud. *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d at 903). Accordingly, courts have traditionally required fraud claims to include the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained as a result. *U.S. ex rel. Grubbs v. Kannegant*i, 565 F.3d 180, 188 (5th Cir. 2009).

That said, the traditional time, place, contents, and identity standard "is not a straightjacket for Rule 9(b)." *Id*. at 190. "The particularity demanded by Rule 9(b) is supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *Id*. at 185 (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. at 570). "Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only

'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombley* must make relief plausible, not merely conceivable, when taken as true." *Id*. at 186. The Fifth Circuit further instructs that Rule 9(b) is "context specific and flexible" to "achieve the remedial purpose of the FCA." *Id*. Specifically, the Fifth Circuit held:

> [T]o plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

*Id*. at 190. The Fifth Circuit later clarified that its decision in *Grubbs* does not absolve *qui tam* relators of the Rule 9(b) heightened pleading requirements:

> *Grubbs* reaffirms the importance of Rule 9(b) in FCA claims, while explaining that a relator may demonstrate a strong inference of fraud without necessitating that the relator detail the particular bill. We established that a relator could, in some circumstances, satisfy Rule 9(b) by providing factual or statistical evidence to strengthen the inference of fraud beyond mere possibility, without necessarily providing details as to *each* false claim. This standard nonetheless requires the relator to provide other reliable indications of fraud and to plead a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government. Significantly, the complaint in Grubbs rested on the relator's actual description of a solicitation by two of the defendants to the relator to participate in an elaborate scheme to defraud the government, the particulars of which were there alleged.

*U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed.Appx. 890, 893 (5th Cir. 2013) (citations omitted).

### *False Claims Act*

The FCA "is the Government's 'primary litigation tool' for recovering losses resulting from fraud." *U.S. ex rel. Marcy v. Rowan*, 520 F.3d 384, 388 (5th Cir. 2008). To aid enforcement, the FCA permits, in certain circumstances "suits by private parties on behalf of the United States against anyone submitting a false claim to the government." *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 351 (5th Cir. 2003). "The FCA prohibits submitting false

7

or fraudulent claims for payment to the United States and authorizes qui tam suits, in which private parties bring civil actions in the Government's name." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404, 131 S.Ct. 1885 (2011). The FCA provisions allowing for private suits "encourage whistleblowers with genuinely valuable information to act as private attorneys general in bringing suits for the common good." *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 377 (5th Cir. 2009). The intent of the FCA is to combat fraud against the government. *Universal Health Servs. Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 136 S.Ct. 1989, 1996 (2016).

The FCA's main substantive provisions subject to civil liability any person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of [the FCA]." 31 U.S.C. § 3729(a)(1)(A–C). To properly plead a violation of the FCA, a relator must plead that "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *U.S. ex rel. Longhi v. Lithium Power Tech. Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (adopting Fourth Circuit requirements in *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir.2008)). The scienter requirement is established if a person "has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A); *Universal Health Servs. Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 136 S.Ct. at 1996. To be material, the alleged fraud must have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

31 U.S.C. § 3729(b)(4); *Universal Health Servs. Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 136 S.Ct. at 2002.

## DISCUSSION AND ANALYSIS

Asserting that Relator has not met the pleading requirements of Rule 12(b)(6) or Rule 9(b), Defendants seek dismissal of the Third Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

### I. FCA Violations under § 3729(a)(1)(A) and (B)

Defendants assert that the Third Amended Complaint fails to sufficiently allege materiality, providing conclusory allegations instead of the particularity required by Rule 9(b). Defendants submit that Relator provides vague claims that Medicare will not pay claims with incomplete face-to-face documentation but fails to identify whether these claims were RAPs, not requiring face-to-face documentation, or final claims. Defendants argue that Relator does not identify a single final claim with incomplete face-to-face documentation, such that her pleading is deficient even if her assertion that Medicare will not pay claims with incomplete face-to-face documentation is true. Further, Defendants assert that the Third Amended Complaint contains the same defects as the previous pleadings by failing to identify a particular false request for payment that was actually billed to Medicare and only adds general allegations that the same billing practices are used in the Waco and Houston offices. Defendants contend that Relator fails to either plead particular details of the alleged scheme or reliable indicia that would lead to a strong inference of fraud.

Relator responds that she sufficiently pled that Medicare consistently refuses to pay final bills lacking a complete face-to-face form. She asserts that allegation is probative and sufficient to meet the pleading requirement of materiality. Relator submits that she has an as-yet unnamed expert witness who would testify that Medicare consistently refuses to pay claims with incomplete

face-to-face forms when it knows that the forms are incomplete. Relator's Response to Defendants' Motion to Dismiss Third Amended Complaint, ECF 102, at *7. Relator asserts that her pleading is clear that Defendants actually submitted false final claims to Medicare for specific patients and that she removed most references to RAPs from her pleading. In support, she cites her allegation that the corporate office automatically submitted final bills and that her audits were of bills that had already been submitted. *Id*. at *10. She additionally asserts that Exhibits 5 and 6 attached to her complaint contain files for patients where Defendants submitted final bills, knowing that the files did not contain complete face-to-face forms. Relator submits that her allegations concerning other offices employing the same billing practices corroborates her allegation of a company-wide scheme.

Defendants respond that Relator relies on the same exhibits previously considered deficient by the Court in its prior rulings and they do not show falsity regarding the submission of a Request for Anticipated Payment ("RAP") or a final claim. Defendants contend that the majority of the exhibits submitted by Relator concern RAPs, which do not require upfront face-to-face documentation or certification. Defendants argue that Relator's allegation that final bills were submitted with missing or incomplete face-to-face documentation stems from her erroneous conclusions regarding patient episode histories. Defendants submit that Relator mistakenly concludes that final bills were submitted because a patient was in a second or third episode, but RAPs may be submitted for subsequent episodes regardless of whether the prior RAP resulted in a final bill or an automatic canceling. To the extent Relator asserts that face-to-face forms were incomplete for failing to include a brief narrative of clinical justification, Defendants assert that regulations do not require a brief narrative for skilled nursing. Similarly, Defendants submit that Relator's allegation that physician certifications were false because clinical findings on the face-

to-face documentation did not support the certification that the patient was homebound lacks merit because the regulations require the medical records, not the face-to-face documentation, to support the certification.  With regard to Exhibits 5 and 6, Defendants assert that the Court already found these exhibits lacking any alleged falsity regarding the submission of a RAP or final claim and they remain deficient.

### a. Relator's Complaint Fails to Allege Details of Fraudulent Scheme under Rule 9

While Relator raises some general allegations regarding false claims, just as she did in her prior pleadings, the Third Amended Complaint lacks the particular details of a scheme to submit false claims that is required by Rule 9.  In *Grubbs*, the relator's complaint, unlike here, "sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud."  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 192.  There, two of the defendants actually solicited the relator to participate in an elaborate scheme to defraud the government, the particulars of which were alleged.  *Id*. at 191–192.  The particulars included the date, place, participants, and the scheme at issue.  *Id*.; *see also U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 Fed.Appx. at 893 (explaining that the *Grubbs* standard "requires the relator to provide other reliable indications of fraud and to plead a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government payment.").

Here, the Third Amended Complaint makes the same general allegations of an "overarching scheme" that were previously rejected in the first and second amended complaints.  Relator once again generally asserts that Defendants engaged in an overarching scheme to grow their business by "increasing patient enrollments by any means necessary and maximizing revenues through fraudulent billing."  Third Amended Complaint, ECF 91, at *2.  Such general allegations do not provide any "reliable indications of fraud" and do not "plead a level of detail"

to show that Defendants engaged in a scheme to defraud the government. *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 Fed.Appx. at 893. Unlike *Grubbs*, Relator has not pled specific factual details of a fraudulent scheme to submit false claims to the government. The Fifth Circuit emphasized that "[i]t is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated through the presentation of false bills." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 190. As with her earlier pleadings, Relator has not alleged adequate facts to show any such scheme. Therefore, Relator has failed to plead with particularity a plausible claim for a FCA violation.

### b. Express and Implied False Certification Theory to Plead an FCA Claim

The Third Amended Complaint also fails because it does not contain sufficient facts supporting the assertion that Defendants submitted RAPs or final claims without satisfying certain conditions in violation of the FCA. Courts have recognized two types of false certification theories in connection with FCA claims—express and implied. Under the express certification theory, "[w]here the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation. *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Relator has not alleged sufficient facts to support an express false certification theory. Instead, she describes an internal billing system where bills are not to be released until a biller verifies all required elements are complete, represented by a checklist on the internal file at the branch level, and then electronically sends them to a corporate office where bills are sent to Medicare through a standard program used by all home health agencies. Third Amended Complaint, ECF 91, at *16-17.

12

Implied false certification rests on the notion that "the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Mikes v. Straus*, 274 F.3d 687, 699 (2nd Cir. 2001); *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F.Supp.2d 28, 33 (D.C. Feb. 24, 2003) (explaining implied false certification theory "where the government pays funds to a party, and would not have paid those funds contained an implied certification of compliance with the law or regulation and was fraudulent."). In other words, implied certification does not assert that the claims for payment submitted to the government were actually false. Rather, the idea is that the claims for payment were impliedly false because they suggested that the provider complied with applicable statutes and regulations (such as Medicare in this case) before submitting the claim.

Implied false certification "can, at least in some circumstances, provide a basis for liability." *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. at 186, 136 S.Ct. at 1999. It encompasses scenarios where "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements" if those omissions "render the defendant's representations misleading with respect to the goods or services provided." *Id.*, 579 U.S. at 187, 136 S.Ct. at 1999. More specifically, the Court held that "the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 190, 136 S.Ct. at 2001. The Court made clear, however, that "not every undisclosed violation of an express condition of payment automatically triggers liability." *Id.* "Whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality

inquiry." *Id*. Materiality is a demanding standard that means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id*. at 193, 136 S.Ct. at 2002. Materiality does not automatically follow because "the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id*. at 194, 136 S.Ct. at 2003. The Court summarized materiality as follows:

> In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id*. at 194-195, 136 S.Ct. 2003-2004.

Here, Relator seeks to establish materiality by alleging that Medicare routinely declines to pay claims with incomplete face-to-face forms. Defendants point out that Relator does not explain whether "claims" are RAPs or final claims. The regulations do not require face-to-face documentation for RAPs. 42 C.F.R. § 424.22(a)(1)(v). Even if the Court assumes, however, that Relator sufficiently pled materiality by alleging evidence showing that home health payments are routinely refused if face-to-face forms are incomplete, materiality is only one element and Relator does not sufficiently plead the other required elements to state a claim.

Relator does not adequately explain how incomplete information in patient files amounts to Medicare violations. None of the referenced exhibits show any alleged falsity regarding submission of a RAP or a final claim. The majority of exhibits relate to the submission of RAPs having the same episode start date and payment date. Relator improperly relies on conclusory

allegations that Defendants submitted claims without necessary criteria. Relator's response focuses on Exhibits 5-B, 5-F, 5-H, 6-A, 6-B, and 6-C as "a few concrete examples of Defendants' fraudulent billing practices." Relator's Response to Defendants' Motion to Dismiss Third Amended Complaint, ECF 102, at *16. As the Court explained in its prior ruling, Exhibits 5-H and 6-A through 6-C relate to RAPs, not final claims. Report and Recommendation, ECF 80, at *18. Relator does not identify any falsity in the documents. RAPs do not have the same face-to-face documentation and certification requirements as final claims. *See* 42 C.F.R. §§ 424.22(a)(1)(v) and 409.43(c). Relator submits that Exhibits 5-A and B are incomplete because they do not specify the specific care or treatments needed, but they do include physician certification of a need for skilled nursing. More importantly, the forms do not show the submission of a claim, whether it was an RAP or final claim. Further, Relator contends that Exhibit 5-F shows an inadequate form because the form was filled in electronically by a "quick fax coord note" attached to the chart instead of written by the physician. The statute cited by Relator however, 42 C.F.R. § 424.22(a)(1)(v), does not include any requirement that the physician must "write" the form. The form, certifying the patient's eligibility for services, is signed and dated by the physician.

Relator simply does not allege sufficient facts to support her claim that final bills were submitted with incomplete or missing documentation. Instead of relying on personal knowledge of final billing, Relator makes a conclusory assertion that certain bills she reviewed had to be final bills because they were not for a first episode. As Defendants point out, however, subsequent patient episodes do not automatically mean that a final claim has been submitted for prior episodes.

As with the prior motion to dismiss, Relator seeks to rely on a Sixth Circuit case to support her assertion that her allegations meet the requirements of Rule 9(b). *See U.S. ex rel. Prather v.*

*Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 761 (6th Cir. 2016).  The Court discussed the *Prather* decision at great length in its prior decision.  Report and Recommendation, ECF 80, at *13-19.  For the same reasons previously discussed, and incorporated here, the facts of this case are distinguishable from the decision in *Prather*.  Relator does not allege any personal knowledge relating directly to IntegraCare's billing practices, as she alleges billing is submitted by the corporate headquarters, she does not allege with particularity that Defendants submitted false RAPs or final claims and she does not identify any particular false requests for payment that were actually billed to Medicare.

Because Relator failed to identify any false or fraudulent claim, Relator's allegations under 31 U.S.C. § 3729(a)(1)(B) also fails as it is based on the same alleged false claims at issue.  Relator has not pled with particularity regarding any false statements or record used either in submission of a RAP or a final claim. Further, Relator has not provided reliable indications of fraud and a level of detail demonstrating that the alleged scheme likely resulted in bills being submitted. Therefore, Relator fails to plead a violation under either § 3729(a)(1)(A) or (B) of the FCA.

## II. Reverse FCA Claim

Defendants assert that Relator failed to adequately plead a reverse FCA claim or cure any of the defects identified in the previous pleadings.  Under the Patient Protection and Affordable Care Act, any person who has received an "overpayment" from Medicare and "knowingly" fails to report and return it within 60 days after the date on which it was "identified" has violated the FCA.  42 U.S.C. § 1320a-7k(d).  This is referred to as a "reverse false claim." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004).

Defendants submit that Relator failed to allege specific allegations showing that Defendants submitted false claims to Medicare for payment, when Defendants identified

16

overpayments, or when or how Defendants knew that such overpayments were false.  In her response, Relator relies on the adequacy of her FCA allegations to support her reverse FCA claim.  She also states generally that she informed Defendants of the need to "call back" final bills not meeting Medicare billing requirements, but Defendants "refused to call back the bills, and a management-level employee insisted to [her] that they could not bill in compliance with Medicare requirements or they would go broke."  Relator's Response to Defendants' Motion to Dismiss Third Amended Complaint, ECF 102, at *20.

Relator has not identified an overpayment because the Third Amended Complaint lacks specific allegations to show that Defendants submitted false final claims to Medicare for payment, as discussed above.  Relator also has not alleged when Defendants identified any overpayments or when and how Defendants knew that such overpayments were false.  Furthermore, in at least one instance, Relator submits that she does not know if services were "written off."  Third Amended Complaint, ECF 91, at *28.  Relator has not properly alleged a reverse FCA claim.

### III.    Abandoned Claims

The motion to dismiss asserts that the Third Amended Complaint fails to plead an Anti-Kickback Statue violation by failing to tie improper inducements to a particular claim.  The motion further asserts that Relator has not stated a claim against Girling or Kindred.  Relator's response wholly fails to respond to these portions of the motion.  A litigant's failure to pursue a claim beyond her complaint, in response to a motion to dismiss, constitutes abandonment of that claim.  *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001)).  Here, Relator abandoned her claim asserting a violation of the Anti-Kickback Statute and any claims against Girling and Kindred.  Those claims should be dismissed.

*Conclusion*

Despite multiple opportunities to cure the deficiencies in her pleadings, twice with guidance from the Court, Relator has not met the requisite pleading standard. The Third Amended Complaint does not offer any meaningful changes from Relator's prior pleadings. A court may dismiss a claim without granting leave to amend if a "plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 248 n.6 (5th Cir. 2000). The motion to dismiss should be granted and Relator's claims should be dismissed with prejudice as to Relator and without prejudice to the United States.[1] Relator should not be afforded an additional, fourth opportunity to amend the pleadings, resulting in a fifth attempt to frame her claims.[2]

## RECOMMENDATION

It is hereby **RECOMMENDED** that Defendants' Motion to Dismiss Third Amended Complaint (ECF 93) be granted. Relator's claims should be dismissed with prejudice, but the dismissal should operate without prejudice to the United States.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). The written objections shall not exceed eight pages. *See* Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations

---

[1] *See U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 456 (5th Cir. 2005) (finding dismissal with prejudice as to the United States unwarranted where a relator's claims were dismissed on a Rule 12(b)(6) motion based on lack of specificity in the complaint as required by Rule 9(b)).

[2] The Court notes that Relator filed yet another motion seeking leave to amend her pleadings, but the motion does not comply with Local Rule CV-7(k).

and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 1st day of March, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE